UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00103-LLK

LAURA KIMBERLY KEITH                                                                          PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets # 17 and 22, respectively, and the case is ripe for determination. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 9).

Plaintiff claims that she is disabled because she cannot sustain even sedentary work due to her inability to sit for four hours total during an eight-hour workday and/or her need to elevate her feet above waist level for more than one hour per workday (in addition to normal breaks). Her claim is supported by the medical opinions of licensed advanced practice registered nurse (APRN) Tanya S. Goins-Harmon and Kip Beard, M.D. Nurse Goins-Harmon is Plaintiff's primary health care provider, and Dr. Beard is a one-time examining source to whom the Administrative Law Judge (ALJ) sent Plaintiff for evaluation after the administrative hearing.

The Court will REMAND this matter to the Commissioner for a new decision because the ALJ's decision failed to identify substantial evidence in support of its rejection of the opinions of Nurse Goins-Harmon and Dr. Bear.

**Background**

The ALJ denied Plaintiff's claim at the last step of the sequential evaluation process based on a finding that, although she can no longer perform her past relevant work, she retains the ability to perform a significant number of sedentary jobs in the national economy – specifically, general office clerk and receptionist. (Administrative Record ("AR"), pp. 120-21). Because these jobs are classified as sedentary, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. The vocational expert (VE) testified that Plaintiff cannot perform these jobs if she has to elevate her feet above waist level for more than one hour per eight-hour workday (in addition to normal breaks). (AR, p. 156).

Plaintiff claims that she is disabled because her Raynaud's phenomenon,[1] neuropathy,[2] and fibromyalgia[3] do not allow her to six hours (total) during an eight-hour workday and require her to elevate her feet above waist level for more than one hour per workday.

Plaintiff has a history of falls, including a recent fall resulting in (at the time of the ALJ's decision) unhealed pelvic and foot fractures.[4] Due to foot injury, she wore a stabilizing controlled ankle

---

[1] Raynaud's phenomenon is a disorder "marked by spasms of the blood vessels in the limbs, especially in the legs, and more often in the toes. During an attack, the affected part aches and feels cold. The spasms are usually initiated by exposure to cold and by emotional strain." *Hicks v. Comm'r of Soc. Sec.*, No. 7:12–cv–618, 2014 WL 670916 n.6 (W.D. Va. Feb. 20, 2014). During an attack, the affected extremity may become discolored (pale white or blue). Raynaud's may be primary or secondary, i.e., associated with another impairment.

At the administrative hearing, Plaintiff's described her Raynaud's as follows: "Like right now my feet are like I'm getting stung by lots of bees and my fingertips, they will turn purpose at times. Oh, and I call it the Freddy Krueger syndrome … like I have these bones behind my knee and it feels like he's in there trying to pull the inside of the back of my calf muscle and stuff out, you know, it's like he's just in there digging." (AR, p. 147).

[2] Neuropathy is defined as "an abnormal and usually degenerative state of the nervous system or nerves; also: a systemic condition (as muscular atrophy) that stems from a neuropathy." *Wilmore v. Comm'r*, No. 2:16-cv-10475, 2016 WL 8671217 n.6 (E.D. Mich. Dec. 9, 2016) (quoting https://www.merriam-webster.com/dictionary/neuropathy#medicalDictionary). Peripheral neuropathy is "a disease or degenerative state (as polyneuropathy) of the peripheral nerves in which motor, sensory, or vasomotor nerve fibers may be affected and which is marked by muscle weakness and atrophy, pain, and numbness." *Id.*

[3] The Social Security Administration describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling (SSR) 12-2p, 2012 WL 3104869, at *2.

movement (CAM) walker boot to the administrative hearing and her post-hearing appointment with Dr. Beard. (AR, p. 137). Plaintiff attributes her tendency to fall to Raynaud's phenomenon affecting her lower extremities. She testified that, when she last fell, she stood up and began walking without "realiz[ing], you know, that [my foot] was asleep that bad and … I couldn't, you know, hold my body weight." (AR, p. 137).

At the outset of the hearing, the ALJ asked Plaintiff directly why she believes she cannot hold even a sedentary job, and Plaintiff responded because "I constantly have to elevate my feet to get them from falling asleep." (AR, p. 136). She testified that the elevation occurs "every day," and she even requires special accommodation at church. (AR, p. 147). In addition to elevation, she has to change position frequently (from sitting to standing/walking and vice versa) because foot elevation helps "for a little while and then …, you know, you've got to move again, you know … like I constantly rub … seems like it helps the blood get back to them." (AR, p. 148). Near the close of the hearing, Plaintiff asked and the ALJ allowed Plaintiff to stand up to relieve symptoms. (AR, p. 156).

Plaintiff's testimony of being unable to sit for prolonged periods of time and needing to elevate her feet when she is sitting was supported by the opinion of Nurse Goins-Harmon. In February 2014, Nurse Goins-Harmon completed the standard physical assessment form and diagnosed: 1) Fibromyalgia; 2) Chronic back pain – bulging disks; 3) Chronic fatigue syndrome; 4) Chronic headaches; 5) Sleep apnea; 6) Raynaud's phenomenon; and 7) Depression. (AR, p. 736). When asked whether Plaintiff needs to rest, recline or lie down to alleviate pain, fatigue, or other symptoms during an eight-hour workday, the Nurse responded "frequently." (*Id*.). When asked how many hours in an eight-hour workday Plaintiff can sit, stand, and walk, the Nurse responded "0" and explained that Plaintiff "cannot stay in 1 position for any set time due to pain in back and legs." (*Id*.). When asked to rate Plaintiff's

---

[4] Plaintiff's tendency to fracture bones when she falls may be related to her osteoporosis, which, in turn, may be related to her prior gastric bypass surgery, which adversely affects her body's ability to absorb nutrients. AR, pp. 137-138.

abilities to lift/carry and use her hands and feet for repetitive action, the Nurse responded "rarely/none," stating that this was "due to Raynaud's phenomenon and fibromyalgia." (*Id*.). The Nurse found that Plaintiff's impairments would likely result in routine absences from work four or more days per month. (*Id*.).

After the hearing, the ALJ sent Plaintiff to Dr. Beard evaluation. Dr. Beard's impression was: 1) Right fifth metatarsal base nondisplaced fracture; reported nonunion with plans for a bone stimulator; 2) Left superior/inferior public rami and right sacral ala fracture, age indeterminate apparently according to history; 3) Fibromyalgia; 4) Raynaud's phenomenon; and 5) Neuropathy, according to history. (AR, pp. 833-34). The Doctor found that, due to these conditions, Plaintiff can sit for a total of four hours and stand/walk for two hours per eight-hour workday. (AR, p. 836). When asked "what activity is [Plaintiff] performing for the rest of the 8 hours?" the Doctor responded "seated with leg elevation, positional change, recumbent." (*Id.*).

In his written decision, the ALJ gave "no weight" to Nurse Goins-Harmon's opinion because an APRN "is not an acceptable medical source" and because her opinion was:

> … extreme and not supported by any facts, as the claimant herself reported activities such as driving and cooking, which require at least some ability to sit and stand. In addition, her own treatment notes state that medication helps the claimant function with less pain.

(AR, p. 119).

The ALJ gave "little weight" to Dr. Beard's opinion because it:

> … contradicted by his own [examination] notes where [Plaintiff] walked unassisted and did not appear to need an assistive device.[5] He failed to explain why he limited [Plaintiff] to four hours of sitting when during his examination, [Plaintiff] appeared comfortable while sitting. Also, he failed to account for evidence in the record that [Plaintiff] will likely improve as her pelvic fracture heals.

(AR, p. 120).

---

[5] Plaintiff observes that the ALJ's characterization of her walking as "unassisted" is misleading because Dr. Beard noted that she was wearing a CAM walker boot, cannot walk a block at a reasonable pace on rough or uneven surfaces, and requires a scooter to perform activities like shopping. (AR, pp. 829, 840).

4

**Findings and Conclusions**

Plaintiff argues that the ALJ's decision failed to identify substantial evidence[6] in support of its rejection of the opinions of Nurse Goins-Harmon and Dr. Beard. The argument is persuasive.

As to Nurse Goins-Harmon, the ALJ correctly found that an APRN "is not an acceptable medical source." (AR, p. 119).[7] However, that classification alone did not warrant the ALJ's giving the Nurse's opinion "no weight." (*Id.*).[8] Additionally, while the Nurse's opinion does appear to be "extreme" if one focuses on the Nurse's findings of essentially no abilities to sit, stand, walk, lift, carry, or use hands and feet, the opinion appears less "extreme" if one considers the Nurse's explanations. According to the Nurse, Plaintiff's Raynaud's phenomenon and fibromyalgia make it impossible to assign "set" abilities to engage in these activities because Plaintiff "cannot stay in 1 position for any set time due to pain in back and legs." (AR, p. 736). In other words, the claim is not that Plaintiff is a helpless invalid (incapable of

---

[6] Judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) contemplates a substantial-evidence review. Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance." *Austin v. Comm'r*, 714 F. App'x 569 (6th Cir. 2018) (quoting *Rogers v. Comm'r*, 486 F.3d 234, 241 (6th Cir. 2007)). It constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether substantial evidence supports an ALJ's decision, reviewing courts must consider the administrative record as a whole and must "take into account whatever in the record fairly detracts from [the decision's] weight." *Id.* (quoting *Beavers v. Sec'y*, 577 F.2d 383, 387 (6th Cir. 1978)).

[7] The version of 20 C.F.R. § 404.1513(a) in effect at the time of the ALJ's decision provided that "acceptable medical sources" are (1) licensed physicians (medical or osteopathic doctors); (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists. Medical sources not on this list, including licensed advanced practice nurses, were deemed to be "other sources." Section 404.1513(d)(1).

While recent changes to the regulations now include licensed advanced practice registered nurses among the list of "acceptable medical sources," the changes are expressly not retroactive. *See* 20 C.F.R. § 404.1502(a)(7) ("Acceptable medical source means a medical source who is a … Licensed Advanced Practice Registered Nurse … for impairments within his or her licensed scope of practice … only with respect to claims filed … on or after March 27, 2017").

[8] Though they are not entitled to controlling weight pursuant to Section 404.1527(c)(2), other source opinions are to be evaluated pursuant to the same factors listed at Sections 404.1527(c)(3) through (c)(6) for evaluating opinions from acceptable medical sources. *See* Social Security Ruling (SSR) 06-3p, 2006 WL 2329939, at *4 ("These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources'").

any activity) but that one cannot reliably forecast her capacities at any given time due to unpredictability of symptoms and need to frequently recline and change position.

As to Dr. Beard, his brief, one-time observation of Plaintiff sitting "comfortabl[y]" and walking "unassisted" does not undermine his findings that Plaintiff can sit (without leg elevation) for a total of four hours per eight-hour workday; stand for two hours per workday; and must be "seated with leg elevation, positional change, recumbent" during the remaining time. (AR, p. 836). Additionally, the ALJ's discounting of Dr. Beard's findings because Dr. Beard allegedly did not take into account the fact that Plaintiff's pelvic facture will likely improve is unpersuasive. Plaintiff's need for leg elevation is due to Raynaud's phenomenon, neuropathy, and fibromyalgia, not pelvic fracture.

**Order**

Because the ALJ's decision was not supported by substantial evidence, this matter is hereby REMANDED to the Commissioner for a new decision identifying substantial reasons for the weight given to the opinions of Tanya S. Goins-Harmon, APRN, and Kip Beard, M.D., and for any further administrative proceedings deemed necessary and appropriate by the Commissioner.[9]

April 10, 2018

Lanny King, Magistrate Judge
United States District Court

---

[9] A remand for a judicial award of benefits (as opposed to a new decision and proceedings) is appropriate (after a reviewing court has determined that the ALJ's decision is not supported by substantial evidence) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Wiser v. Comm'r*, 627 F. App'x 523 (6th Cir. 2015) (quoting *Faucher v. Sec'y*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Sec'y*, 771 F.2d 966, 973 (6th Cir. 1985)).